IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARIEN ANTHONY NELSON,

                 Petitioner,

        vs.

HEIDI M. LACKNER, Warden, Sierra
Conservation Center,[1]

             Respondent.

No. 2:12-cv-0968-JKS

MEMORANDUM DECISION

Darien Anthony Nelson, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Nelson is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the Sierra Conservation Center.  Respondent has answered, and Nelson has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

On December 21, 2009, Nelson pled no contest to second-degree robbery in satisfaction of a five-count indictment.  The plea agreement provided that Nelson would be sentenced to a maximum imprisonment term of five years in state prison.

Nelson signed a plea form acknowledging his understanding of the terms of the plea and a waiver of his rights.  Nelson indicated on the form that he had "fully discussed the facts, merits, and possible defenses of this [his] case with [his] attorney" and that he understood that, before the trial court could accept his plea, he had to show that he had been advised of, understood, and waived certain constitutional rights.  Through the plea form, he then waived his right to a

---

[1]     Heidi M. Lackner, Warden, Sierra Conservation Center, is substituted for Bruno Stolc, Warden, Red Rock Correctional Center.  FED. R. CIV. P. 25(c).

preliminary hearing, right to a speedy and public trial, right to confront and subpoena witnesses, right against self-incrimination, and right to appeal.  He also indicated on the form that "[n]o threats ha[d] been made against [him] or any member of [his] family or close friends in order to induce [him] to make this plea."

He further acknowledged on the form:

> I declare that my attorney has read and explained this document to me, and I hereby freely and voluntarily, having full knowledge and understanding of the rights that I am giving up and the possible consequences which may result from my plea, do hereby request the Court to accept my new and different plea(s).

Before he formally entered his plea, Nelson engaged in a colloquy with the court that corroborates the statements in his plea form as to his understanding of the plea agreement's terms and effects.  Nelson affirmatively answered when asked whether, when he went over the waiver of rights with his lawyer, he understood the rights listed and understood that he was giving up those rights with his no contest plea.  After Nelson's counsel stipulated that there was a factual basis for the plea, the court found Nelson guilty of second-degree burglary.

That same day his co-defendant Courtney Johnson also pled no contest to second-degree robbery in exchange for a five-year prison sentence.  His co-defendant Tommie Barnett pled no contest to conspiracy to commit robbery in exchange for a three-year prison sentence.

On January 20, 2010, Nelson asked to withdraw his plea.  He informed the court, "I just want to say that the deal I have right now for five years at 85 percent and the strike, I believe that it's unconstitutional for my first offense.  I just want to withdraw my plea of no contest."  The court appointed conflict counsel for Nelson for the express purpose of determining whether there were grounds for a plea withdrawal motion.

2

On April 13, 2010, Nelson's conflict counsel formally moved to withdraw the plea on the ground that, on February 10, 2010, Barnett had recanted a statement he had given to the police implicating Nelson in the crime.  Nelson contended:

> [T]he plea was induced by a factor overcoming [his] exercise of his free judgment.  In the instant matter [Nelson] entered the plea based upon his mistaken belief that Tommie Barnett would continue to lie and support the false allegations that he made to the police during his initial interview.  [Nelson] was faced with a situation wherein a co-defendant was making false statements such that the only wise choice at the time was to take the offer that did not include the potential life sentence ([Nelson] was charged with kidnaping for robbery which carries a term of 7 to life).  It was only after he entered his plea, and his co-defendant entered his own plea, that [Nelson] learned that Barnett was willing to recant his prior statement and admit that "Darien Nelson had nothing to do with the robbery that took place in Benicia on October 1, 2009.  The statement I made to the Benicia Police implementing [sic] [Nelson's] involvement w[as] false, he didnt [sic] have anything to do with the situation/robbery."

The court denied Nelson's motion, reasoning:

> At the time Mr. Barnett made that statement he had already accepted and received the benefit of a negotiated plea, [by] which he avoided a life sentence, . . . and there's no indication that that offer or that deal was going away or [would] be taken away from him if he made such a statement.  So given, again, that the statement is unsworn and it offers no substantive details, I don't find there's good cause . . . for Mr. Nelson to withdraw his plea at this point.  I think it was nonetheless voluntarily entered, knowing and intelligent.

Nelson subsequently moved pursuant to *People v. Marsden*, 465 P.2d 44 (Cal. 1970), seeking a new attorney because he believed that his initial counsel would not file an appeal as to the plea withdrawal denial.  He complained that counsel had withheld the Barnett letter from him and had failed to "comply[] with basis instructions over the course of [his] incarceration." Counsel informed the court that she had received the Barnett letter at the same time that conflict counsel received it, she had spoken with conflict counsel, and had confirmed that conflict counsel had received the letter.  She also stated that she and a colleague had spoken with a potential witness as Nelson had requested, but that the witness was not cooperative and would

not make any further statements.  The court denied Nelson's *Marsden* motion, stating that the issues Nelson raised related to his appellate rights and not his representation in the instant case.

The court then sentenced Nelson to five years of imprisonment pursuant to the plea agreement.  The court also ordered restitution but reserved the right to determine the specific amount.  The court further advised Nelson that he would be placed on parole for up to five years following his sentence.

Through assigned counsel, Nelson appealed his conviction by filing a brief pursuant to *People v. Wende*, 600 P.2d 1071 (Cal. 1979), whereby appointed counsel filed an appellate brief reciting a summary of the proceedings and the facts of the case and requesting the court to independently review the record because counsel had found no arguable legal issues to raise. Appellate counsel informed Nelson of the filing of the *Wende* brief and advised Nelson that he could file a supplemental brief in the Court of Appeal within 30 days of the date the *Wende* brief was filed or by leave of the court.

Nelson replied to appellate counsel by letter dated November 9, 2010, complaining that counsel had not responded to Nelson regarding his question about fee assessment and that Nelson had not received the DNA evidence he requested.  Nelson further requested counsel "to file an immediate extension in the Courts [sic] of Appeal, to receive more time for [counsel] to extradite [Nelson's Record on Appeal] so [that Nelson] could start preparing [his] supplemental brief."

By letter dated November 24, 2010, Nelson's appellate counsel informed Nelson, "If you would like a continuance from the Court of Appeal in order to file a supplemental brief, you must ask the court directly and state reasons for your request."  Counsel further stated:

> [T]here are no reasonably arguable issues in your appeal in respect to the fee assessment you mentioned or DNA.  There are no investigations pending in respect to those matters.
>
> In my professional opinion, DNA issues, if any, are not relevant to your case or appeal.  Pursuant to a plea bargain with negotiated disposition, you pled no contest on December 21, 2009 to count 3 (second degree robbery) in violation of section 211.  Your two codefendants also pled guilty: Johnson to robbery and Barnett to conspiracy to commit robbery.  In exchange for your no contest plea, you were promised–and received–a prison term of 5 years and dismissal of all remaining counts.  At the time of your plea, you stipulated to a factual basis for the plea.

On December 7, 2010, Nelson sent papers requesting an extension of time to file his supplemental brief to the Office of the Attorney General and the First District Appellate Project, the non-profit law office who had appointed counsel for Nelson's appeal.  Nelson did not send the request to the Court of Appeal.

The Court of Appeal affirmed Nelson's conviction in an unpublished, reasoned opinion filed on December 29, 2010, concluding that, after a review of the entire record, there were no issues that merited briefing.  The opinion also stated that Nelson was informed of his right to file a supplemental brief but elected not to do so.  Nelson did not seek further review of the denial.

By letter dated June 12, 2011, Nelson requested that the Court of Appeal re-open his case for review, claiming that it was his "natural right" to re-submit a supplemental brief.  The Court of Appeal denied the request, explaining that his appeal was final and that jurisdiction had been transferred to the county superior court.

Nelson then filed a petition for a writ of habeas corpus in the county superior court, which was denied in an unpublished, reasoned opinion.  The court concluded that his arguments that the trial court erred in denying his *Marsden* and plea withdrawal motions were procedurally barred because they could have been raised on direct appeal.  The court also rejected his claims that

5

conflict and trial counsel were ineffective after finding no evidence in the record to suggest that their performances were deficient.

Nelson then filed a petition for a writ of habeas corpus in the California Supreme Court, challenging the trial court's imposition of a restitution fine, which was summarily denied on February 15, 2012.

Nelson again sought habeas relief in the California Supreme Court, asserting that he should have been allowed to withdraw his guilty plea, that his conflict, trial, and appellate counsel were all ineffective, that he should have been granted a new attorney pursuant to his *Marsden* motion, and that the appellate court should have re-opened his case. The court summarily denied his petition on February 15, 2012.

Nelson timely filed a petition for a writ of habeas corpus to this Court on March 20, 2012.

## II. GROUNDS/CLAIMS

Nelson asserts six grounds for habeas relief, including claims that: 1) the trial court erred in denying his plea withdrawal motion; 2) his conflict counsel was ineffective for failing to investigate the Barnett matter and obtain his sworn affidavit; 3) his trial counsel was ineffective for "failing to expose additional favorable evidence" and for lack of investigation; 4) the trial court erred in denying his *Marsden* motion; 5) his appellate counsel was ineffective for "fail[ing] to timely extradite his right" and for filing a *Wende* motion; and 6) the appellate court erred in refusing to re-open his case to allow Nelson to file a supplemental brief on appeal.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

7

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). Where there is no reasoned state-court decision denying a claim presented to the state, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)). Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state court decision was "objectively unreasonable." *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir 2005) (per curiam)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

*Claims 1 and 4.  Trial Court Errors*

Nelson asserts that the trial court erred in denying two of his motions.

A.      *Claim 1.  Denial of Motion to Withdraw Plea*

Nelson first argues that the trial court abused its discretion and misapplied state and federal law when it denied his motion to withdraw his no contest plea.[2]  He further contends that the trial court's decision was in conflict with California Penal Code § 1018[3] because the court did not apply the "fair and just reason standard" despite the fact that Nelson "clearly satisfied the requirement for the motion to be granted."  Nelson raised this argument in his petition for habeas relief in the county superior court.  The court denied the claim, concluding that it was barred from collateral review under *In re Dixon*, 264 P.2d 513 (Cal. 1953), because it could have been raised on direct appeal.

Respondent contends that, because the superior court declined to hear this claim on habeas review, consideration of the claim is procedurally barred.  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law

---

[2]      Whether the state trial court must find a factual basis for Nelson's no contest plea is not at issue here because Nelson did not assert actual innocence prior to entering his plea and does not challenge the sufficiency of the factual basis of his plea.  *See Loftis v. Almager*, 704 F.3d 645, 648-49 (9th Cir. 2012) (holding that no constitutional issue cognizable under § 2254 exists where the state trial court's failure to find a factual basis for a no contest plea is "unaccompanied by protestations of innocence").  Moreover, during Nelson's plea colloquy, defense counsel stipulated that there was a factual basis for the entry of his plea.

[3]      That section provides, "On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended, the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."  CAL. PENAL CODE § 1018.

ground that is independent of the federal question and adequate to support the judgment."

*Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  "Once the state has adequately pled the

existence of an independent and adequate state procedural ground as an affirmative defense, the

burden to place that defense in issue shifts to the petitioner."  *Bennett v. Mueller*, 322 F.3d 573,

586 (9th Cir. 2003).  "In order to constitute adequate and independent grounds sufficient to

support a finding of procedural default, a state rule must be clear, consistently applied, and well-

established at the time of the petitioner's purported default."  *Morales v. Calderon*, 85 F.3d 1387,

1393 (9th Cir. 1996) (citation omitted).  If a petitioner has procedurally defaulted on a claim, a

federal court may nonetheless consider the claim if the petitioner shows: 1) good cause for his

failure to exhaust the claim; and 2) prejudice from the purported constitutional violation; or 3)

demonstrates that not hearing the claim would result in a "fundamental miscarriage of justice."

*Coleman*, 501 U.S. at 749-50; *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).

It is firmly established under California law that "habeas corpus will not lie as a substitute

for an appeal . . . nor as a second appeal."  *In re Harris*, 855 P.2d 391, 396 (Cal. 1993) (citing *In

re Foss*, 519 P.2d 1073 (Cal. 1974); *In re Terry*, 484 P.2d 1375 (Cal. 1971); *In re Waltreus*, 397

P.2d 1001 (Cal. 1965); *In re Spears*, 204 Cal. Rptr. 333 (Cal. Ct. App. 1984); *In re Wagner*, 173

Cal. Rptr. 766 (Cal. Ct. App. 1981)).  Thus, Nelson's claim is procedurally barred unless he can

show cause and prejudice.  Recognizing that Nelson is proceeding *pro se* and that his pleadings

must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), it appears

that Nelson contends that his appellate counsel's failure to forward his request for an extension

of time to the appellate court denied him an opportunity to file a supplemental brief raising this

issue.  As discussed with regards to Claim 5, *infra*, Nelson fails to show that appellate counsel

had an affirmative duty to ensure that the motion for an extension was properly filed and thus

fails to show that counsel's failure to do so excuses the procedural default.  However, this Court

may address a claim on the merits notwithstanding the procedural default.  *See Flournoy v.

Small*, 681 F.3d 1000, 1004 n. 1 (9th Cir. 2012) ("While we ordinarily resolve the issue of

procedural bar prior to any consideration of the merits on habeas review, we are not required to

do so when a petition clearly fails on the merits."); *Franklin v. Johnson*, 290 F.3d 1223, 1232

(9th Cir. 2002) ("[C]ourts are empowered to, and in some cases should, reach the merits of

habeas petitions if they are . . . clearly not meritorious despite an asserted procedural bar.").

Under California law, "[w]hen a defendant is represented by counsel, the grant or denial

of an application to withdraw a plea is purely within the discretion of the trial court after

consideration of all factors necessary to bring about a just result." *People v. Weaver*, 12 Cal.

Rptr. 3d 742, 753 (Cal. Ct. App. 2004).  "On appeal, the trial court's decision will be upheld

unless there is a clear showing of abuse of discretion."  *Id.*  In the federal courts, the standard of

review of a denial of a motion to withdraw a guilty plea is the same as it is in California, *i.e.*, an

abuse of discretion.  *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).  Although the

Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional

violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court

has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[4]

---

[4]        At one time, the Ninth Circuit viewed a state court ruling to be "objectively
unreasonable" if it amounted to a clear error. *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th
Cir. 2000).  This is the test the Ninth Circuit uses in reviewing a trial court decision under the
abuse of discretion standard.  *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en
banc).  The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as
inappropriate under the AEDPA.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error
standard is insufficiently deferential to state courts).

Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it is was an abuse of discretion for her to have done so–the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (quoting § 2254(d)(1))).  Accordingly, to the extent that Nelson contends that the trial court abused its discretion, he has failed to raise a claim of constitutional dimension cognizable in this Court.

Moreover, whether the trial court violated the California penal code is irrelevant on habeas review.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In any event, Nelson fails to allege facts supporting a finding that the trial court's denial of his withdrawal motion violated his due process rights.  Nelson advances no argument that the California rule that requires that a defendant must show good cause to withdraw his or her guilty plea by clear and convincing evidence violates the Constitution, and independent research by this Court has not revealed any such authority.  A petitioner may not transform a state-law issue into

12

a federal one by simply asserting a violation of constitutional law.  *See Langford v. Day*, 110

F.3d 1380, 1389 (9th Cir. 1996).

Indeed, while Barnett's recantation may have weakened the prosecution's case, it did not

eviscerate it.  Two female victims and a would-be patron of the store identified Nelson as one of

the robbers.  The trial court's denial of Nelson's withdrawal motion was based at least in part on

its assessment of the credibility of the recanting witness.  This Court is precluded from re-

weighing the evidence or assessing credibility.  *See Bruce*, 376 F.3d at 957.  This Court cannot

find that the decision of the California court was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States" or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d).  Nelson is therefore not entitled to

relief on his plea withdrawal claim.

B.      *Claim 4.  Denial of Marsden Motion*

Nelson similarly claims that the trial court abused its discretion "by not removing

inadequate trial counsel and relying on personal believability instead of rendering a judgment

based on material facts."  Nelson likewise raised this claim in his petition for habeas relief in the

county superior court, which the court also denied as barred under *Dixon*.  Due to the court's

denial, this claim may also be deemed procedurally defaulted.

In any event, Nelson again fails to allege facts that would entitle him to habeas relief.

Denial of a *Marsden* motion may implicate the Sixth Amendment right to counsel.  *Schell*, 218

F.3d 1017, 1023 (9th Cir. 2000) (en banc); *Bland v. Cal. Dep't of Corrs.*, 20 F.3d 1469, 1475-76

(9th Cir. 1994), overruled on other grounds in *Schell*, 218 F.3d at 1025-26; *Hudson v. Rushen*,

686 F.2d 826, 828-29 (9th Cir. 1982).  The Sixth Amendment right to counsel includes a

qualified right to retain counsel of choice.  *See Schell*, 218 F.3d at 1025 (citations omitted).

However, an indigent defendant, while entitled to appointed counsel, is not constitutionally

entitled to appointed counsel of choice.  *Hendricks v. Zenon*, 993 F.2d 664, 671 (9th Cir. 1993).

When a criminal defendant requests a substitution of counsel, the trial court is

constitutionally required to inquire about the defendant's reasons for wanting a new attorney.

*Schell*, 218 F.3d at 1025 ("[I]t is well established and clear that the Sixth Amendment requires on

the record an appropriate inquiry into the grounds for such a motion, and that the matter be

resolved on the merits before the case goes forward.").  The Supreme Court has, however,

"reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between

an accused and his counsel."  *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).  The ultimate question

before this Court then is not whether the state trial court abused its discretion in denying

Nelson's motion but whether its denial "actually violated [Nelson's] constitutional rights in that

the conflict between [Nelson] and his attorney had become so great that it resulted in a total lack

of communication or other significant impediment that resulted in turn in an attorney-client

relationship that fell short of that required by the Sixth Amendment."  *Schell*, 218 F.3d at 1026.

The Ninth Circuit has explained:

> The test for determining whether the trial judge should have granted a substitution motion
> is the same as the test for determining whether an irreconcilable conflict existed.  The
> court must consider: (1) the extent of the conflict; (2) whether the trial judge made an
> appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to
> substitute counsel.

*Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (citations omitted).

14

Here, the record reflects that Nelson was given an opportunity to address his concerns with counsel to the court. Although his discussion with the court was brief, there is no indication that Nelson was in any way prevented from sharing his concerns with the court. *See United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (finding inquiry adequate where defendant "was given the opportunity to express whatever concerns he had, and the court inquired as to [defense counsel's] commitment to the case and his perspective on the degree of communication"). With respect to the nature and extent of the alleged conflict with counsel, the substance of Nelson's complaints appear to amount to a disagreement over defense trial tactics and a concern that counsel would not assist him in appealing the court's denial of his plea withdrawal motion. However, it is well-established that tactical matters are within the purview of trial counsel's discretion and disagreements over them do not necessitate substitution of counsel. *United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003) (holding that dispute over trial tactics "is not a sufficient conflict to warrant substitution of counsel"). Further, Nelson moved to substitute counsel after the court had heard and denied his plea withdrawal motion. Accordingly, as the trial court noted, his concerns with counsel were related mainly to his appellate rights, and the timing of Nelson's *Marsden* motion does not support substitution of counsel either. Because Nelson fails to demonstrate that the facts enumerated by the Ninth Circuit in *Daniels* weighed in favor of granting his substitution motion, Nelson cannot show that he was denied his Sixth Amendment right to counsel and is therefore not entitled to relief on this claim.

15

*Claims 2, 3, and 5.  Ineffective Assistance of Counsel*

Nelson further argues that his conflict, trial, and appellate counsel all rendered ineffective assistance.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Nelson must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

16

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard.  *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam)).

A.      *Claim 2: Conflict counsel's failure to investigate and obtain a sworn letter.*

Nelson claims that his conflict counsel rendered ineffective assistance because he "did no investigation into the letter sent by [Nelson's] codefendant exonerating him from [the] robbery charge" and "failed to obtain a sworn affidavit."  Nelson raised this claim in his habeas petition to the superior court, which the court denied.  Citing *Strickland*, the superior court stated:

> With regard to [Nelson's] claim that the conflict defender appointed to assist him with his motion to withdraw his plea performed deficiently by failing to investigate the letter sent by Barnett and failing to obtain a sworn statement from Barnett, [Nelson] does not provide any facts or reasonably available documentary evidence, to show that counsel performed in an objectively deficient manner.

With regards to his claim that conflict counsel failed to perform an adequate investigation, Nelson fails to specifically identify what his counsel could have discovered had he conducted a more thorough investigation of the evidence at issue.  The Ninth Circuit has routinely rejected ineffective assistance of counsel claims based on a failure to investigate where the petitioner has not identified the specific exculpatory evidence that should have been presented.  *See, e.g.*, *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (petitioner failed "to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds"); *Hendricks v. Calderson*, 70 F.3d 1032, 1042 (9th Cir. 1995)

("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the *Strickland* test.").

The trial court did not find Barnett's alleged recantation credible in part because the "statement is unsworn and it offers no substantive details."  To the extent that Nelson argues that conflict counsel should have conducted a more thorough investigation by obtaining a sworn statement that provided more details, Nelson cannot demonstrate that he was prejudiced by such failure.  After the trial court denied Nelson's motion to withdraw the plea, conflict counsel suggested that he could obtain a sworn statement and requested clarification from the court as to whether the procurement of the statement would impact the ruling.  The court replied that the fact that the statement was unsworn was "not the only basis."  Again, the trial court's denial of Nelson's withdrawal motion was based at least in part on its assessment of the credibility of the recanting witness, which this Court is precluded from re-assessing.  *See Bruce*, 376 F.3d at 957. Accordingly, this Court cannot find that the decision of the superior court on habeas review was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Nelson therefore cannot prevail on his claim that conflict counsel rendered ineffective assistance.

B.     *Claim 3: Trial counsel's failure to conduct a reasonable pre-trial investigation.*

Nelson likewise argues that trial counsel was ineffective for "failing to conduct a reasonable pre-trial investigation, and by failing to expose additional favorable evidence."  The superior court also denied this claim on habeas review:

18

> [Nelson's] claim that trial counsel performed deficiently by not investigating the letter written by Barnett in order to support his motion to withdraw his plea lacks merit. Trial counsel cannot be said to have performed deficiently.  Trial counsel received Barnett's letter after [Nelson] entered his plea, and a conflict defender was appointed to handle the motion to withdraw the plea.
>
> [Nelson's] claim that trial counsel performed deficiently by withholding . . . Barnett's letter is unsupported by any facts or evidence.  Documents included with this petition indicate that trial counsel received this letter at the same time as the conflict defender.

In his Traverse, Nelson "not only contends that trial counsel rendered ineffective [assistance] by failing to investigate Mr. Barnett's letter after she was reappointed to [Nelson's] case for sentencing, but throughout her entire time as counsel."  However, by voluntarily entering his no contest plea, Nelson has waived his claims of ineffective counsel with respect to counsel's performance prior to the entry of his plea.  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992) (applying *Tollett* to pre-plea claims of ineffective assistance of counsel).

His claim that trial counsel was ineffective for failing to conduct a reasonable investigation prior to his plea entry fails for the additional reason that Nelson again fails to specify what trial counsel could have discovered as a result of such investigation.  *See Ceja*, 97 F.3d at 1255; *Hendricks*, 70 F.3d at 1042.  With respect to his claim that trial counsel rendered ineffective counsel post-plea by failing to investigate and withholding Barnett's letter, a review of the record indicates that the superior court on habeas review correctly determined that trial counsel received the letter at the same time as conflict counsel, after conflict counsel had already been appointed.  This Court cannot find the superior court's determination unreasonable or contrary to federal law.  Nelson is therefore not entitled to relief on this ineffective assistance claim either.

C.    *Claim 5.  Appellate counsel's failure to provide constitutionally-adequate assistance.*

Nelson additionally contends that appellate counsel was ineffective for "failing to provide his record on appeal, failing to request an extension of time for [Nelson] to file a supplemental brief, and failing to raise on appeal issues that the trial court abused [its] discretion in denying his motions to withdraw [the] plea and substitute counsel."  Nelson raised this claim in his petition for habeas relief in the California Supreme Court, which was summarily denied.

As an initial matter, the Supreme Court has held that a habeas petitioner cannot state a claim for ineffective assistance of appellate counsel merely because his attorney filed a brief pursuant to *Wende.  See Smith v. Robbins*, 528 U.S. 259, 284 (2000) ("It is enough to say that the *Wende* procedure . . . affords adequate and effective appellate review for criminal indigents. Thus, there was no constitutional violation in this case simply because the *Wende* procedure was used.").  At any rate, Nelson cannot establish that he was prejudiced by counsel's failure to raise Nelson's plea withdrawal and substitute counsel arguments because, as discussed with respect to Claims 1 and 4, *supra*, this Court has determined that the trial court properly denied those motions.  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1434-35 (9th Cir.1989) (appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

With respect to Nelson's claim that appellate counsel was ineffective for failing to provide him with his record on appeal, as discussed with respect to Claim 6, *infra*, there is no federal constitutional right to file a *pro se* supplemental brief on appeal of conviction.  Because there is no such right, there necessarily can be no right of access to the record in order to assist in

the preparation of such a brief, and counsel cannot be ineffective for failing to provide such access.

Moreover, Nelson points to no federal authority suggesting that constitutionally-effective representation requires appellate counsel to request an extension of time for his client to file a *pro se* supplemental brief, and this Court cannot find any such authority either.  The record indicates that Nelson's appellate counsel informed Nelson that he would have to request a continuance from the Court of Appeal directly.  The record further demonstrates that Nelson was able to prepare a motion, but he inadvertently failed to send it to the Court of Appeal.  While he faults counsel for failing to ensure that the papers were forwarded and properly filed in the court, Nelson fails to show that counsel was aware of the error and affirmatively disregarded any duty to cure Nelson's error.  This Court therefore cannot conclude that his appellate counsel was ineffective for failing to ensure that Nelson received an extension of time to file his supplemental brief.

Accordingly, none of his arguments demonstrate that appellate counsel was ineffective, and Nelson is not entitled to relief on this ground.

*Claim 6.  Appellate Court's Failure to Re-Open Case*

Finally, Nelson argues that the California Court of Appeal "violated his federal constitutional right by not reopening his case and allowing him to submit a supplemental brief." Nelson also raised this claim in his petition for habeas relief in the California Supreme Court, which was summarily denied.

Pursuant to *People v. Wende*, California law provides that a defendant whose counsel has filed a *Wende* brief raising no arguable issue has 30 days after the filing of the *Wende* brief in

which to file a supplemental brief on his own behalf.  *Wende*, 600 P.2d at 1072; *see also Smith*, 528 U.S. at 265-66 (describing the *Wende* brief procedure and holding that it comports with constitutional due process).  While California law provides a defendant a right to timely file a supplemental brief, there is no corresponding federal law that provides such a right.  There is no federal constitutional right to self-representation on direct appeal, much less a right to hybrid representation that would require a court to permit a defendant to represent himself at the same time that he is represented by appellate counsel.  *See Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163-164 (2000) (holding that there is no federal constitutional right to self-representation on direct appeal from a criminal conviction); *see also United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir.1994) ("A defendant does not have a constitutional right to 'hybrid' representation.").  It follows that the California Court of Appeal's refusal to consider petitioner's untimely pro se supplemental brief could not have been a constitutional violation of federal dimension.  *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000) (holding that, because there is no federal constitutional right to self-representation on appeal, petitioner was not entitled to submit a *pro se* appellate brief in addition to the brief submitted by appointed counsel).  Furthermore, to the extent that Nelson argues that the Court of Appeal violated California law in failing to consider his untimely brief, such argument fails to raise a claim of constitutional dimension cognizable in this Court.  *See Swarthout*, 131 S. Ct. at 863 (holding that it is of no federal concern whether state law was correctly applied).  Because Nelson cannot show that the appellate court's refusal to reopen his case to consider his untimely supplemental brief violated his constitutional rights or was otherwise unreasonable or contrary to federal law, Nelson is not entitled to relief on this claim.

## V. CONCLUSION AND ORDER

Nelson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a

certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the

issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: November 21, 2013.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge